Alfred G. Rava, SBN 188318
Rava Law Firm
3667 Voltaire Street
San Diego, CA 92106
Phone: 619-238-1993
Fax: 619-374-7288
Email: alrava@cox.net

Attorney for Plaintiff Harry Crouch and the Putative Class

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| Harry Crouch, on behalf of himself and all others similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>RUBY CORP doing business as ASHLEY MADISON; RUBY LIFE, INC. doing business as ASHLEYMADISON.COM; and DOES 1 through 10,<br><br>Defendants. | Case No.   **'22 CV 0711 MMA JLB**<br><br>**CLASS ACTION COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF FOR:**<br><br>1. **Violation of Civil Code § 51 (The Unruh Civil Rights Act);**<br>2. **Violation of Civil Code § 51.5; and**<br>3. **Violation of Civil Code § 51.6 (The Gender Tax Repeal Act of 1995)**<br><br>**CLASS ACTION**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiff Harry Crouch, on behalf of himself and all others similarly situated, brings the following unlawful discrimination allegations against Defendant Ruby Corp doing business as Ashley Madison, and Ruby Life, Inc. doing business as ashleymadison.com (collectively "Ashley Madison" or "Defendants") for charging male consumers more than female consumers to use Ashley Madison's matchmaking services.

## **PARTIES**

1.     At all times relevant hereto, Plaintiff Harry Crouch has been a citizen of the State of California, a heterosexual man who has identified himself as a male, and has been over the age of 21.

2.     On information and belief, at all times relevant hereto, Defendant Ruby Corp has been a corporation organized under the laws of the province of Ontario, Canada, and has been doing business throughout California, including in San Diego County, California, as Ashley Madison.

3.     On information and belief, at all times relevant hereto, Defendant Ruby Life, Inc. has been a corporation organized under the laws of the province of Ontario, Canada, and has been doing business throughout California, including in San Diego County, California, as www.AshleyMadison.com.

4.     Throughout this Complaint, Plaintiff shall refer to both the app version and web-based version of Defendants' business establishment collectively as "Ashley Madison" unless otherwise indicated.

5.     On information and belief, at all times relevant hereto, Ashley Madison was a business establishment according to Civil Code sections 51 (the codification of California's Unruh Civil Rights Act), 51.5, and 51.6 (codification of California's Gender Tax Repeal Act) that intentionally created, advertised, marketed, employed, managed, and/or at least aided the unequal treatment and discrimination of Ashley Madison's subscribers and of those individuals who visited an Ashley Madison website or app with the intent to use Ashley Madison's services and encountered terms or conditions that excluded these individuals from full and equal access to Ashley Madison's services based on the sex, sexual orientation, and/or gender identity of the subscribers and those individuals who visited an Ashley Madison website or app with the intent to use Ashley Madison's services.

6.     The true names and capacities of Does 1 through 10 are unknown to Plaintiff. When their true names and capacities are learned, Plaintiff will amend this complaint accordingly. Plaintiff is informed and believes, and on that basis alleges, each

Class Action Complaint for Damages and Injunctive Relief

fictitiously named defendant is responsible in some way for and at least aided the occurrences herein alleged, and those defendants proximately caused Plaintiffs and the members of the Class damages. Each reference in this complaint to "Defendants," "Defendant," "Ashley Madison," or a specifically named defendant refers to all defendants sued under fictitious names.

7.    Unless otherwise alleged, whenever reference is made in this complaint to any act of "defendant," "defendants," or to a specifically named defendant, such allegation shall mean that each defendant acted individually and jointly with the other defendant named in the complaint.

8.    Unless otherwise alleged, whenever reference is made in this complaint to any act or omission of any corporate or business defendant, such allegation shall mean that such corporation or other business defendant committed or omitted to act as in this complaint through its officers, members, directors, stockholders, employees, agents, and/or representatives while they were acting within the actual or apparent scope of their authority.

9.    At all relevant times alleged herein, each defendant has been each the agent, alter-ego, representative, partner, joint venturer, employee, or assistant of the other defendants and has acted within the course and scope of said agency, alter-ego, representation, partnership, or joint venture with the knowledge, notification, authorization, and consent of each of the other defendants.

## JURISTICTION AND VENUE

10.    Jurisdiction is proper under 28 U.S.C. § 1332 because Plaintiff is a citizen of the State of California, both Defendants are citizens of Canada, and the amount in controversy exceeds $5,000,000 exclusive of interest and costs, and therefore, both diversity jurisdiction and the damages threshold under the Class Action Fairness Act of 2005 are present, thereby giving this Court jurisdiction.

11.    Venue is proper pursuant to 28 U.S.C. § 1391 for the following reasons: (i) the conduct complained of herein has occurred within this judicial district; and (ii) Defendants have conducted business within this judicial district at all times relevant.

Class Action Complaint for Damages and Injunctive Relief

12.    Because Defendants conducted business within the State of California at all times relevant, personal jurisdiction is established.

## NATURE AND BASIS OF CLAIMS

13.    This is a straightforward case of gender-based price discrimination in violation of California Civil Code sections 51, 51.5, and 51.6 and two unanimous California Supreme Court opinions, *Koire v. Metro Car Wash,* 40 Cal.3d 24 (1985) and *Angelucci v. Century Supper Club,* 41 Cal.4th 160 (2007), which held that price discrimination of consumers in California based on sex violates the Unruh Civil Rights Act.

14.    Ashley Madison is a dating app or website, the former being mainly accessed by cell phones and the latter is at www.AshleyMadison.com.

15.    Ashley Madison makes use of its subscribers' cell phone global positioning system or IP address to assist in the creation of the subscribers' profiles and find prospective matches for each subscriber, prospective matches for which the subscriber can then initiate contact. Signing up as a Guest Member on Ashley Madison is free. However, unlike well-known online dating sites such as Match.com, Ashley Madison's business model is based on credits rather than monthly subscriptions. Thus, Ashley Madison allows users to set up their Guest Member accounts for free, but users cannot communicate with each other unless credits are purchased and spent. For a conversation between two members, one of the members, always the man in male/female conversations, must first purchase and then spend credits to communicate with the woman. Any follow-up messages between the two members are free after communication has been initiated.

16.    Ashley Madison prohibits all men – be they heterosexual, bisexual, or transgender – from initiating contact with any women without first purchasing credits and then using those credits to initiate contact with women. Women never have to pay to initiate contact with men. Instead, if a woman wishes to initiate contact with a man, she sends a "collect" message indicating interest, then the man is required to use his credits to open the woman's collect message. Then, if the man wishes to respond, he is

Class Action Complaint for Damages and Injunctive Relief

required to use even more credits to start the conversation in the same fashion as when a man initiates contact in the first place. Thus, regardless of whether a man initiates contact with a woman or a woman initiates contact with a man, the man has to pay, but the woman does not.

17.    Ashley Madison's price discrimination has violated three of California's civil rights statutes, California Civil Code sections 51, 51.5, and 51.6, by denying heterosexual, bisexual, and transgender men full and equal accommodations, advantages, facilities, privileges, or services, on the basis of sex, sexual orientation, and gender identity, while during the same time Ashley Madison has provided women full access to Ashley Madison's services without making women pay to initiate contact with men.

18.    On information and belief, this disparate, sex-, sexual orientation-, and gender identity-based discrimination has been the business model for Ashley Madison's dating app since its inception twenty years ago, thus indicating Ashley Madison is liable for thousands, if not tens or hundreds of thousands of violations or offenses of Civil Code sections 51, 51.5, and 51.6 in California.

19.    Despite these and other California anti-discrimination statutes, two California Supreme Court opinions specifically holding that sex-based pricing practices violate Civil Code sections 51, 51.5, and 51.6, and numerous rulings and publications by the California Department of Justice and Department of Fair Employment and Housing addressing how businesses violate the Unruh Civil Rights Act when they treat consumers unequally based on their sex, sexual orientation, or gender identity, Ashley Madison continues to do just that – even going so far as brazenly flaunting its discrimination of its subscribers and prospective subscribers based on their sex, sexual orientation, and gender identity. For example, Ashley Madison openly advertises and admits the following at the Frequently Asked Questions section of its website at https://www.ashleymadison.com/app/public/faq.p (last visited May 17, 2022), a printout of which is reproduced as Exhibit 1:

Class Action Complaint for Damages and Injunctive Relief

How much does it cost to use Ashley Madison?

For women seeking men, Ashley Madison is free.  [M]en seeking women… can sign up for a free Guest Membership to check out the site – and when they are ready to start communicating, we offer a variety of credit and subscription packages.

------------------------------------------------------------------------

What's included in the free membership?  What's not?

For women seeking men, full membership on Ashley Madison is free.  Everyone else* is welcome to sign up as a Guest Member to view profiles, share photos, and send winks all for free.   When Guest Members are ready to start communicating with other members, we offer a range of credit and subscription packages.

* Men seeking women, men seeking men, and women seeking women must purchase a credit package to enjoy full membership status on Ashley Madison.

------------------------------------------------------------------------

What is a full member?

Being a Full Member means having a positive amount of credits in your account or an active subscription. With credits or a subscription, a member can communicate with other members on the site by sending them personalized messages, open collect messages, initiate chat, send gifts, and send priority messages.

------------------------------------------------------------------------

How do credits work?

7 credits to initiate contact with a female member via message.

Want to make your initial contact standout even more? 12 credits allow you to initiate contact with a female member via a priority, highlighted message.

5 credits to open collect messages.

Once you have initiated contact, additional messages to the same member are free!

Class Action Complaint for Damages and Injunctive Relief

20.    Ashley Madison provides women seeking men full membership for free, but Ashley Madison denies full membership to men unless they purchase credits. This intentional discrimination in pricing violates Civil Code sections 51, 51.5, and 51.6.

21.    In the landmark Unruh Civil Rights Act gender-price discrimination case of *Angelucci v. Century Supper Club* 41 Cal.4th 160, 167 (2007) the California Supreme Court, in ruling that a business could not charge women and men different cover charges to enter a Los Angeles supper club, perhaps best summarized the purpose and intent of the Unruh Act as follows:

> The Unruh Civil Rights Act (Civ. Code, § 51 et seq.) must be construed liberally in order to carry out its purpose. The act expresses a state and national policy against discrimination on arbitrary grounds. Its provisions are intended as an active measure that creates and preserves a nondiscriminatory environment in California business establishments by banishing or eradicating arbitrary, invidious discrimination by such establishments. The act stands as a bulwark protecting each person's inherent right to full and equal access to all business establishments (§ 51, subd. (b)). The act imposes a compulsory duty upon business establishments to serve all persons without arbitrary discrimination. The act serves as a preventive measure, without which it is recognized that businesses might fall into discriminatory practices.

22.    In the earlier and seminal California Supreme Court case on gender-based pricing discrimination of California consumers, *Koire v. Metro Car Wash.* 40 Cal.3d 24, 34-35 (1985), the Court explained at length how gender-based pricing practices that seemingly favor women over men actually harm both sexes:

> Moreover, differential pricing based on sex may be generally detrimental to both men and women, because it reinforces harmful stereotypes. (See Babcock et al., Sex Discrimination and the Law (1975) p. 1069; Note, *Washington's Equal Rights Amendment and Law Against Discrimination -- The Approval of the Seattle Sonics' "Ladies' Night"* (1983) 58 Wash. L. Rev. 465, 473.)

> Men and women alike suffer from the stereotypes perpetrated by sex-based differential treatment. (See Kanowitz, "*Benign*" *Sex Discrimination: Its*

*Troubles and Their Cure (1980) 31 Hastings L.J. 1379, 1394;* Comment, *Equal Rights Provisions: The Experience Under State Constitutions (1977) 65 Cal.L. Rev. 1086, 1106-1107.)* When the law "emphasizes irrelevant differences between men and women[,] [it] cannot help influencing the content and the tone of the social, as well as the legal, relations between the sexes. . . . As long as organized legal systems, at once the most respected and most feared of social institutions, continue to differentiate sharply, in treatment or in words, between men and women on the basis of irrelevant and artificially created distinctions, the likelihood of men and women coming to regard one another primarily as fellow human beings and only secondarily as representatives of another sex will continue to be remote. When men and women are prevented from recognizing one another's essential humanity by sexual prejudices, nourished by legal as well as social institutions, society as a whole remains less than it could otherwise become." (Kanowitz, Women and the Law (1969) p. 4.)

Whether or not these defendants consciously based their discounts on sex stereotypes, the practice has traditionally been of that character. For example, in *Com., Pa. Liquor Control Bd. v. Dobrinoff (1984) 80 Pa. Cmwlth. 453 [471 A.2d 941],* the trial court relied on just such a stereotype in upholding a tavern's cover charge distinction based on sex. The court suggested that the purpose of the discount was "'chivalry and courtesy to the fair sex.'" (*Id*., at p. 943.) The appellate court held, however, that a variance in admission charge based "solely upon a difference in gender, having no legitimate relevance in the circumstances" violated the Pennsylvania Human Relation Act's prohibition against sex discrimination. (*Ibid*.)

23.    Ashley Madison's favoritism of women over men has repudiated hundreds of years of women's struggle to be viewed as being equal to men. Not only has the California Supreme Court - twice in the above *Koire* and *Angelucci* opinions - expressed its disapproval of how ostensibly female-favored business practices such as practices that charge consumers different prices based on the consumers' sex, the United States Supreme Court has similarly weighed in as well about "romantic paternalism" directed at women. In *Frontiero v. Richardson*, 411 U.S. 677 (1973), the U.S. Supreme Court

ruled the military must provide its female members with the same housing and medical benefits as it provides its male members. Justice William J. Brennan Jr. wrote that the military's unequal treatment of men and women is yet another example of one of those types of traditional sex discrimination that ostensibly appears to benefit women, but is "rationalized by an attitude of 'romantic paternalism' which, in practical effect, put women, not on a pedestal, but in a cage." *Id*. at p. 684.

24.    Ashely Madison's disparate treatment of men and women has caused discontent, animosity, harm, resentment, or envy among the sexes, constituted intentional, arbitrary, unreasonable, and/or invidious discrimination, and contravened California's historical effort and public policy to eradicate sex discrimination. Defendant willfully and maliciously injured Plaintiff and class members by intentionally discriminating against them based on their sex, sexual orientation, and/or gender identity.

25.    In April and May of 2022, Plaintiff Harry Crouch, a heterosexual male who is and always has identified as a male, and was seeking women, visited Ashley Madison's website with the definite and specific intent to use Ashley Madison's services. At those times, Mr. Crouch encountered the above-referenced sex-based discriminatory terms and conditions against men and did not sign up as a member, user, or subscriber of Ashley Madison's services because of Ashley Madison's unequal treatment of and discrimination against men.

26.    The California Department of Fair Employment and Housing ("DFEH"), the State agency charged with preventing unlawful discrimination by businesses operating in California, has several Unruh Civil Rights Act publications specifically addressing the unlawfulness of sex-based pricing, practices, and promotions. These DFEH publications are attached herein as Exhibits 2, 3, and 4. Exhibits 3 and 4 can be found                    at                    www.dfeh.ca.gov/wp-content/uploads/sites/32/2017/12/DFEH_UnruhFactSheet.pdf                    and                    at www.dfeh.ca.gov/wp-content/uploads/sites/32/2017/12/DFEH_UnruhPamphlet.pdf, respectively.

27.    By this action, Plaintiff seeks redress for Ashley Madison's unequal treatment of and discrimination against Plaintiff and class members based on their sex, sexual orientation, and/or gender identity.

## CLASS ALLEGATIONS

28.    Plaintiff brings this class action on his own behalf and on behalf of all other persons similarly situated under Fed. R. Civ. P. 23(a), (b)(2), and (b)(3) as follows:

All subscribers to the Ashley Madison app to whom Ashley Madison denied equal treatment, at any time these subscribers were in California, based on the subscribers' sex, sexual orientation, and/or gender identity during the period beginning on May 19, 2019 and continuing through the date of trial (the "Members Class.")

All persons who, while in California, visited Ashley Madison's app or website, including but not limited to Ashley Madison's "Frequently Asked Questions" page on its website or at software application download stores such as Apple's "App Store" and Google's "Play Store," with the intent to use Ashley Madison's services, and encountered Ashley Madison's sex-based, sexual orientation-based, and gender identity-based discriminatory terms and conditions that denied these same persons full and equal access to Ashley Madison's services during the period beginning on May 19, 2019 and continuing through the date of trial (the "Intended Members Class"). The Members Class and the Intended Members Class are collectively referred to herein as the "Class."

29.    Not included in the Class are the following individuals and/or entities: Defendants and their respective parents, subsidiaries, affiliates, officers and directors, current or former employees, and any entities in which Defendants have a controlling interest; all individuals who make a timely election to be excluded from this proceeding

using the correct protocol for opting out; all judges and their staff members assigned to hear any aspect of this litigation, as well as such judges' immediate family members; and Plaintiff's counsel and anyone employed by Plaintiff's counsel.

30.    This action has been brought and may properly be maintained pursuant to Federal Rules of Civil Procedure 23(a) and (b)(2) and (b)(3) for the below reasons:

(a) The members of the proposed Class are so numerous it would be impracticable to join them all individually in a single action. The proposed Class is believed to number at least thousands of members. If the court determines notice to be necessary or appropriate, members of the proposed Class may be notified of the pendency of this action by mail and/or email, supplemented or substituted by published notice;

(b) Common questions of law and fact exist as to all members of the proposed Class. These questions predominate over any questions that affect only individual members of the proposed Class. These common legal and factual questions include:

(1) Whether Ashley Madison providing only females seeking males full membership for free while denying heterosexual, bisexual, and transgender males full membership on the basis of their sex, sexual orientation, and gender identity unless they paid for full membership;

(2) Whether Ashley Madison providing only females seeking males full membership for free while denying heterosexual, bisexual, and transgender males full membership on the basis of their sex, sexual orientation, and gender identity unless they paid for full membership violates Civil Code section 51;

(3) Whether Ashley Madison providing only females seeking males full membership for free while denying heterosexual, bisexual, and transgender males full membership for free on the basis of

Class Action Complaint for Damages and Injunctive Relief

their sex, sexual orientation, and gender identity unless they paid for full membership violates Civil Code section 51.5;

(4) Whether Ashley Madison providing only females seeking males full membership for free while denying heterosexual, bisexual, and transgender males full membership for free on the basis of their sex, sexual orientation, and gender identity unless they paid for full membership violates Civil Code section 51.6;

(5) Whether persons who, while in California, visited an Ashley Madison website with the intent to use Ashley Madison's services, and encountered Ashley Madison's terms and conditions that excluded these persons from full and equal access to Ashley Madison's services based on the persons' sex, sexual orientation, or gender identity, were treated unequally in violation of Civil Code section 51;

(6) Whether persons who, while in California, visited an Ashley Madison website with the intent to use Ashley Madison's services, and encountered Ashley Madison's terms and conditions that excluded these persons from full and equal access to Ashley Madison's services based on the persons' sex, sexual orientation, or gender identity, were treated unequally in violation of Civil Code section 51.5;

(7) Whether persons who, while in California, visited an Ashley Madison website with the intent to use Ashley Madison's services, and while at an Ashley Madison website, encountered Ashley Madison's terms and conditions that excluded these persons from full and equal access to Ashley Madison's services based on the persons' sex, sexual orientation, or gender identity, were discriminated against and/or blacklisted in violation of Civil Code section 51.5; and

Class Action Complaint for Damages and Injunctive Relief

(8) Whether persons who, while in California, visited an Ashley Madison website with the intent to use Ashley Madison's services, and while at an Ashley Madison website, encountered Ashley Madison's terms and conditions that excluded these persons from full and equal access to Ashley Madison's services based on the persons' sex, sexual orientation, or gender identity, were discriminated against in violation of Civil Code section 51.6.

31.    Plaintiff's claims are typical of those of the proposed Class. Like the members of the proposed Class, Ashley Madison treated Plaintiff unequally based on his sex, sexual orientation, and/or gender identity. Based upon the Plaintiff and proposed Class's sex, sexual orientation, and/or gender identity, Ashley Madison (1) denied Plaintiff and the members of the proposed Class the equal accommodations, advantages, facilities, privileges, or services to which they are entitled under California Civil Code section 51; (2) discriminated against and/or blacklisted Plaintiff and the members of the proposed Class in violation of California Civil Code section 51.5; and (3) discriminated against Plaintiff and the members of the proposed Class in violation of California Civil Code section 51.6. Plaintiff and the members of the proposed Class are similarly situated and were similarly treated unequally, discriminated against, and blacklisted by the same course of unlawful conduct alleged herein.

32.    Plaintiff will fairly and adequately protect the interests of the members of the proposed Class. Plaintiff is a member of the proposed Class and has no interests adverse to the interests of the proposed Class. Plaintiff is a champion of equal rights and equal treatment for everyone no matter their personal characteristics such as sex, sexual orientation, or gender identity. Plaintiff has been treated unequally because of his sex, sexual orientation, and gender identity as a result of Ashley Madison's above conduct, policy, and practice. This unequal treatment and harm to Plaintiff provides him with a substantial stake in this action and the incentive to prosecute it vigorously for

Class Action Complaint for Damages and Injunctive Relief

himself and the proposed Class. Plaintiff has retained highly competent counsel experienced in prosecuting Civil Code sections 51, 51.5, and 51.6 class actions and individual claims for the unequal treatment, discrimination, and blacklisting of consumers by businesses based on consumers' sex, sexual orientation, and gender identity.

33.    A class action is superior to other available methods for the fair and efficient adjudication of the litigation because individual joinder of all members of the proposed Class is impracticable. The damages suffered by each individual member of the proposed Class are relatively small given the expense and burden of prosecuting an individual action. Thus, it would be virtually impossible for the members of the proposed Class to individually redress the wrongs done to them. Even if the members of the proposed Class themselves could afford such individual litigation, such litigation would constitute a highly avoidable inefficiency in the administration of justice by the courts.

34.    Also, individualized litigation presents the potential for inconsistent or contradictory judgments. Importantly, despite the many California statutes, California Supreme Court opinions, and State of California administrative agency publications addressing business practices that discriminate against consumers, many consumers still may not know that Ashley Madison's disparate treatment of them based on their sex, sexual orientation, or gender identity violates California's anti-discrimination laws. And these consumers may not know that Ashley Madison's wrongs are subject to the rights and remedies provided by Civil Code section 52. A class action will right the wrongs inflicted on those many people who Ashley Madison discriminated against and who do not even know they have legally recognizable claims that provide for statutory damages, injunctive relief, and attorneys' fees awards.

35.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted and/or have refused to act on grounds generally applicable to each of the classes, making appropriate declaratory, equitable, and injunctive relief with respect to Plaintiffs and the Class Members as a whole. The Class

Class Action Complaint for Damages and Injunctive Relief

Members in each of the two classes are entitled to declaratory, equitable, and injunctive relief to end Defendants' common, unfair, and unlawful discriminatory policies.

36.     Class certification is also appropriate pursuant to Fed. R. Civ. P. 23(b)(3) because common questions of fact and law predominate over any questions affecting only individual Class Members in the two classes, and because a class action is superior to other available methods for the fair and efficient adjudication of this litigation since joinder of all members is impracticable. The Class Members have been damaged and are entitled to recovery of statutory penalties under California Civil Code section 52 because of Defendants' common, unfair, and discriminatory policies. Damages are capable of measurement on a classwide basis. Wells Fargo engages in continuous, permanent, and substantial activity in California. There will be no undue difficulty in the management of this litigation as a class action.

## FIRST CAUSE OF ACTION
### Violation Of The Unruh Civil Rights Act, California Civil Code Section 51
### Denial Of Equal Treatment Based On Sex

37.     Plaintiff incorporates in this cause of action the allegations contained in every preceding paragraph of this Complaint as if they were set out in full herein.

38.     Ashley Madison is a "business establishment" within the meaning of the Unruh Civil Rights Act (California Civil Code section 51).

39.     By virtue of Ashley Madison's acts and omissions in allowing only women seeking men to have full membership for free, while denying heterosexual, bisexual, and transgender males full membership unless they first purchased credits, Ashley Madison intentionally denied equal accommodations, advantages, facilities, privileges, or services to Plaintiff and the proposed Class on the basis of their sex, which is prohibited by Civil Code section 51.

40.     Pursuant to Civil Code section 52, Ashley Madison is liable to Plaintiff and the members of the Class for their statutory damages mandated by Civil Code section 52 for each and every offense, and attorneys' fees determined by the Court in addition thereto.

Class Action Complaint for Damages and Injunctive Relief

41.    In addition, pursuant to Civil Code section 52, injunctive relief is necessary and appropriate to prevent Ashley Madison from continuing its discriminatory actions as alleged above. Plaintiff and members of the proposed Class are entitled to public injunctive relief on behalf of himself, the Class, and the general public.

### SECOND CAUSE OF ACTION

**Violation Of The Unruh Civil Rights Act, California Civil Code Section 51**
**Denial Of Equal Treatment Based On Sexual Orientation**

42.    Plaintiff incorporates in this cause of action the allegations contained in every preceding paragraph of this Complaint as if they were set out in full herein.

43.    Ashley Madison is a "business establishment" within the meaning of the Unruh Civil Rights Act (California Civil Code section 51).

44.    By virtue of Ashley Madison's acts and omissions in allowing only women seeking men to have full membership for free, while denying heterosexual, bisexual, and transgender males full membership unless they first purchased credits, Ashley Madison intentionally denied equal accommodations, advantages, facilities, privileges, or services to Plaintiff and the proposed Class on the basis of their sexual orientation, which is prohibited by Civil Code section 51.

45.    Pursuant to Civil Code section 52, Ashley Madison is liable to Plaintiff and the members of the Class for their statutory damages mandated by Civil Code section 52 for each and every offense, and attorneys' fees determined by the Court in addition thereto.

46.    In addition, pursuant to Civil Code section 52, injunctive relief is necessary and appropriate to prevent Ashley Madison from continuing its discriminatory actions as alleged above. Plaintiff is entitled to public injunctive relief on behalf of himself, the Class, and the general public.

Class Action Complaint for Damages and Injunctive Relief

### THIRD CAUSE OF ACTION
### Violation Of The Unruh Civil Rights Act, California Civil Code Section 51
### Denial Of Equal Treatment Based On Gender Identity

47.    Plaintiff incorporates in this cause of action the allegations contained in every preceding paragraph of this Complaint as if they were set out in full herein.

48.    Ashley Madison is a "business establishment" within the meaning of the Unruh Civil Rights Act (California Civil Code section 51).

49.    By virtue of Ashley Madison's acts and omissions in allowing only women seeking men to have full membership for free, while denying heterosexual, bisexual, and transgender males full membership unless they first purchased credits, Ashley Madison intentionally denied equal accommodations, advantages, facilities, privileges, or services to Plaintiff and the proposed Class on the basis of their gender identity, which is prohibited by Civil Code section 51.

50.    Pursuant to Civil Code section 52, Ashley Madison is liable to Plaintiff and the members of the Class for their statutory damages mandated by Civil Code section 52 for each and every offense, and attorneys' fees determined by the Court in addition thereto.

51.    In addition, pursuant to Civil Code section 52, injunctive relief is necessary and appropriate to prevent Ashley Madison from continuing its discriminatory actions as alleged above. Plaintiff is entitled to public injunctive relief on behalf of himself, the Class, and the general public.

### FOURTH CAUSE OF ACTION
### Violation Of California Civil Code Section 51.5
### Discrimination Based On Sex

52.    Plaintiff incorporates in this cause of action the allegations contained in every preceding paragraph of this Complaint as if they were set out in full herein.

53.    Ashley Madison is a "business establishment" within the meaning of California Civil Code section 51.5.

54.    By virtue of Ashley Madison's acts and omissions in allowing only women seeking men to have full membership for free, while denying heterosexual, bisexual,

and transgender males full membership unless they first purchased credits, Ashley Madison discriminated against Plaintiff and the proposed Class on the basis of their sex, which is prohibited by Civil Code section 51.5.

55.    Pursuant to Civil Code section 52, Ashley Madison is liable to Plaintiff and the members of the Class for their statutory damages mandated by Civil Code section 52 for each and every offense, and attorneys' fees determined by the Court in addition thereto.

56.    In addition, pursuant to Civil Code section 52, injunctive relief is necessary and appropriate to prevent Ashley Madison from repeating its discriminatory actions as alleged above. Plaintiff is entitled to public injunctive relief on behalf of himself, the Class, and the general public.

## FIFTH CAUSE OF ACTION
### Violation Of California Civil Code Section 51.5
### Discrimination Based On Sexual Orientation

57.    Plaintiff incorporates in this cause of action the allegations contained in every preceding paragraph of this Complaint as if they were set out in full herein.

58.    Ashley Madison is a "business establishment" within the meaning of California Civil Code section 51.5.

59.    By virtue of Ashley Madison's acts and omissions in allowing only women seeking men to have full membership for free, while denying heterosexual, bisexual, and transgender males full membership unless they first purchased credits, Ashley Madison discriminated against Plaintiff and the proposed Class on the basis of their sexual orientation, which is prohibited by Civil Code section 51.5.

60.    Pursuant to Civil Code section 52, Ashley Madison is liable to Plaintiff and the members of the Class for their statutory damages mandated by Civil Code section 52 for each and every offense, and attorneys' fees determined by the Court in addition thereto.

61.    In addition, pursuant to Civil Code section 52, injunctive relief is necessary and appropriate to prevent Ashley Madison from repeating its discriminatory actions as

Class Action Complaint for Damages and Injunctive Relief

alleged above. Plaintiff is entitled to injunctive relief on behalf of himself, the Class, and the general public.

**SIXTH CAUSE OF ACTION**
**Violation Of California Civil Code Section 51.5**
**Discrimination Based On Gender Identity**

62.    Plaintiff incorporates in this cause of action the allegations contained in every preceding paragraph of this Complaint as if they were set out in full herein.

63.    Ashley Madison is a "business establishment" within the meaning of California Civil Code section 51.5.

64.    By virtue of Ashley Madison's acts and omissions in allowing only women seeking men to have full membership for free, while denying heterosexual, bisexual, and transgender males full membership unless they first purchased credits, Ashley Madison discriminated against Plaintiff and the proposed Class on the basis of their gender identity, which is prohibited by Civil Code section 51.5.

65.    Pursuant to Civil Code section 52, Ashley Madison is liable to Plaintiff and the members of the Class for their statutory damages mandated by Civil Code section 52 for each and every offense, and attorneys' fees determined by the Court in addition thereto.

66.    In addition, pursuant to Civil Code section 52, injunctive relief is necessary and appropriate to prevent Ashley Madison from repeating its discriminatory actions as alleged above. Plaintiff is entitled to injunctive relief on behalf of himself, the Class, and the general public.

**SEVENTH CAUSE OF ACTION**
**Violation Of California Civil Code Section 51.6**
**Price Discrimination Based On Gender**

67.    Plaintiff incorporates in this cause of action the allegations contained in every preceding paragraph of this Complaint as if they were set out in full herein.

68.    Ashley Madison is a "business establishment" within the meaning of California Civil Code section 51.6.

69.    By virtue of Ashley Madison's acts and omissions in allowing only women seeking men to have full membership for free, while denying men full membership unless they first purchased credits, Ashley Madison discriminated with respect to the price charged for services of similar or like kind because of Plaintiff and the proposed Class's gender, which is prohibited by Civil Code section 51.6.

70.    Pursuant to Civil Code section 52, Ashley Madison is liable to Plaintiff and the members of the Class for their statutory damages mandated by Civil Code section 52 for each and every offense, and attorneys' fees determined by the Court in addition thereto.

71.    In addition, pursuant to Civil Code section 52, injunctive relief is necessary and appropriate to prevent Ashley Madison from repeating its discriminatory actions as alleged above. Plaintiff is entitled to public injunctive relief on behalf of himself, the Class, and the general public.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for the following relief on behalf of himself and the members of the Class:

1. Public injunctive relief in the form of a preliminary and permanent injunction against Defendants and the officers, agents, successors, employees, representatives, and any and all persons acting in concert with them, from engaging in each of the discriminatory policies, practices, customs, and usages set forth herein;

2. Certify a class under Rule 23(a) and (b)(2) and (b)(3) of the Federal Rules of Civil procedure, appoint Plaintiff's counsel as Class Counsel, and appoint the named Plaintiff as the Class representative;

3. For an order requiring Defendants' officers and employees to undergo diversity, equity, and inclusion training, specifically to recognize and acknowledge men and women as being equal and therefore entitled to equal treatment;

Class Action Complaint for Damages and Injunctive Relief

4. For statutory damages of $4,000 for each and every offense Defendants committed against each member of the Class pursuant to Civil Code section 52;

5. For costs incurred herein, including attorneys' fees to the extent allowable by statute, including by Civil Code sections 52 and Code of Civil Procedure section 1021.5; and

6. For such other and further relief as this court may deem proper.

## **DEMAND FOR JURY TRIAL**

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure and 29 U.S.C. § 623(c)(2), Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which he has a right to a jury trial.

Dated: May 18, 2022                    Respectfully Submitted

                                        _/s/ Alfred G. Rava_
                                        Alfred G. Rava (Cal. Bar No. 188318)
                                        RAVA LAW FIRM
                                        3667 Voltaire Street
                                        San Diego, California 92106
                                        Phone: 619-238-1993
                                        Fax: 619-374-7288
                                        E-mail: alrava@cox.net
                                        *Attorney for Plaintiff Harry Crouch and the Proposed Classes*

Class Action Complaint for Damages and Injunctive Relief

# EXHIBIT 1

>Home (https://www.ashleymadison.com/) > FAQ

# Frequently Assked Questions

Privacy

Security and Privacy Tips

Take control of your account
settings

Ashley Madison Features

Membership and Billing

## Membership and Billing

### How much does it cost to use Ashley Madison?  ⌄

For women seeking men, Ashley Madison is free. Women seeking women and men seeking women or men can sign up for a free Guest Membership to check out the site — and when they are ready to start communicating, we offer a variety of credit and subscription packages.

### What's included in the free membership? What's not?  ⌄

For women seeking men, full membership on Ashley Madison is free. Everyone else* is welcome to sign up as a Guest Member to view profiles, share photos, and send winks all for free. When Guest Members are ready to start communicating with other members, we offer a range of credit and subscription packages.

*Men seeking women, men seeking men, and women seeking women must purchase a credit package to enjoy full membership status on Ashley Madison.

### What is a Full Member?  ⌄

Being a Full Member means having a positive amount of credits in your account or an active subscription. With credits or a subscription, a member can communicate with other members on the site by sending them personalized messages, open collect messages, initiate chat, send gifts, and send priority messages.

### What payment methods do you accept?  ⌄

### How will the credit card charges appear on my card?  ⌄

### How do credits work?  ⌄

7 credits to initiate contact with a female member via message.

Want to make your initial contact standout even more? 12 credits allow you to initiate contact with a female member via a priority, highlighted message.

5 credits to open collect messages.

Once you have initiated contact, additional messages to the same member are free!

### How can I stop automatic billing for credits?  ⌄

### How do I cancel a subscription?  ⌄

### What is the mobile fee? Is it mandatory? How do I deselect this option?  ⌄

Press (https://media.ashleymadison.com)    Blog (https://blog.ashleymadison.com)    Privacy (https://www.ashleymadison.com/app/public/privacy.p)
Cookie Policy (https://www.ashleymadison.com/app/public/cookie.p)    Terms (https://www.ashleymadison.com/app/public/tandc.p?c=1)
Contact Us (https://www.ashleymadison.com/app/public/contact.p)
© 2001 - 2022 Ruby Life Inc. - Official Ashley Madison website (https://www.ashleymadison.com/)

# EXHIBIT 2

## Protections Under the Law Against Sex Discrimination

The Unruh Civil Rights Act (Civ. Code, § 51), originally enacted in 1959, was designed to protect the rights of Californians from arbitrary discrimination and to guarantee their rights to full and equal access to all public accommodations regardless of sex.

Discrimination by business establishments on the basis of sex is against the law. It is unlawful for any business that is open to the general public to discriminate against a patron based on any of the following classifications: sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation. The Unruh Act protection is not limited to these classifications. It is an Unruh Act violation for a business to offer special treatment, whether preferential or detrimental, to one class of patrons regardless of the business' motives for doing so.

## Businesses that are Governed by the Unruh Civil Rights Act

The list below includes examples of businesses that are covered by the Unruh Act. This list is non-exhaustive, and may include any place of public accommodation regardless of whether the entity is a traditional business or non-profit entity.

- Bars and Nightclubs.
- Restaurants.
- Hotels and Motels.
- Retail Shops.
- Golf Courses.
- Fitness Clubs or Gyms.
- Theaters.
- Hospitals.
- Barber Shops and Beauty Salons.
- Non-Profit Organizations (open to the public).
- Public Agencies.
- Housing Accommodations.

## Filing a Complaint

The Department of Fair Employment and Housing (DFEH or Department) is charged with the task of upholding the Unruh Act, and ensuring that its laws and principles are not violated. If you believe you are a victim of unlawful discrimination, do not hesitate to call the DFEH and file a complaint following these steps:

- Contact the DFEH by calling the toll free number at (800) 884-1684 to schedule an appointment.
- "Be prepared to present specific facts about the alleged harassment of discrimination.
- "Provide any copies you may have of documents that support the charges in the complaint.
- Keep records and documents about the complaint, such as receipts, stubs, bills, applications, flyers, witness contact information, and other materials.

## Examples of Sex-Based Discrimination Under the Unruh Violations

The following are examples of potential violations of the Unruh Act. The list is not meant to be exhaustive, and there is other conduct that may violate the Act.

- Providing free admission, discounts, or promotional gifts to only one sex.
- Charging men and women different prices for comparable services, such as clothing alterations, haircuts, dry cleaning, or drinks at a restaurant or bar.
- Maintaining "women only" or "men only" exercise areas of a fitness club or gym and excluding or deterring the opposite sex from those areas.
- Establishing a "women only" or "men only" business establishment which would otherwise be completely open to the public.
- Excluding one sex from a business premises during certain times.
- Posting signs or adopting policies for "women recommended" or "men preferred."
- Requiring members of one sex to submit to searches to gain admittance to a business.

establishment while providing admittance to members of the other sex without the same level or degree of search.

- Promoting a business with "ladies night" discounts on admission and services.
- Denying access to a business, such as a nightclub to a particular sex, or giving preference to one sex over the other.



Complaints must be filed within one year from the last act of discrimination. The DFEH will conduct an impartial investigation.

The Department is not an advocate for either the person complaining or the person complained against. The Department represents the state. The DFEH will, if possible, try to assist both parties to resolve the complaint. If a voluntary settlement cannot be reached, and there is sufficient evidence to establish a violation of the law, the Department may issue an accusation and litigate the case before the Fair Employment and Housing Commission or in civil court. This law provides for a variety of remedies that may include the following:

■ Out-of-pocket expenses.
■ Cease and desist orders.
■ Damages for emotional distress.
■ Statutory damages of three times the amount of actual damages, or a minimum of $4,000 for each offense.

For more information, contact the DFEH
Toll Free (800) 884-1684
Sacramento area and out-of-state (916) 227-0551
Videophone for the Deaf (916) 226-5285
E-mail contact.center @dfeh.ca.gov
Web site www.dfeh.ca.gov
Facebook
http://www.facebook.com /#!/pages/Department-of-Fair-Employment-and-Housing/183801915445
YouTube http://www.youtube.com /califdfeh
Twitter http://twitter.com /DFEH

In accordance with the California Government Code and Americans with Disabilities Act requirements, this publication can be made available in Braille, large print, computer disk, or tape cassette as a disability-related reasonable accommodation for an individual with a disability. To discuss how to receive a copy of this publication in an alternative format, please contact the DFEH at the telephone numbers and links above.



State of California
**DEPARTMENT OF**
**FAIR EMPLOYMENT & HOUSING**





## References

1. California Civil Code section 51.
2. *Rotary Club of Duarte v. Board of Directors* (1987) 178 Cal.App.3d 1035. A non-profit club was a business establishment under the Unruh Act because it offered its members substantial "commercial advantages and business benefits." Membership in these kinds of organizations is a privilege or advantage under the Unruh Act. Thus, termination of membership based on sex is prohibited.
3. *Warfield v. Peninsula Golf & Country Club* (1995) 10 Cal.4th 594. By offering the public access to its facilities, the County Club became a business establishment under the Unruh Act and could not exclude women.

4. *Ibister v. Boys' Club of Santa Cruz* (1985) 40 Cal.3d 72. A non-profit activities center for boys was a place of public accommodation, and excluding an entire class of patrons, such as women, was illegal.
5. *Angelucci v. Century Supper Club* (2007) 41 Cal.4th 160. It was a violation of the Unruh Act for a night club to charge its male patrons a higher price for admission. The patrons need not affirmatively request nondiscriminatory treatment, but rather, are entitled to it. The Unruh Act imposes a compulsory duty upon business establishments to serve all persons without arbitrary discrimination.
6. *Koire v. Metro Car Wash (* 1985) 40 Cal.3d 24. The Unruh Act broadly condemns any business establishment's policy of gender-based price discounts.

## Unruh Civil Rights Act

All persons within the jurisdiction of this state are free and equal, and no matter what their sex, race, color, religion, ancestry, national origin, disability, medical condition, marital status, or sexual orientation are entitled to the full and equal accommodations, advantages, facilities, privileges, or services in all business establishments of every kind whatsoever.

# EXHIBIT 3



# PUBLIC ACCESS DISCRIMINATION AND CIVIL RIGHTS

## FACT SHEET

## THE UNRUH CIVIL RIGHTS ACT PROVIDES PROTECTION FROM DISCRIMINATION BY ALL BUSINESS ESTABLISHMENTS IN CALIFORNIA

The unruh civil rights act provides protection from discrimination by all business establishments in California, including housing and public accommodations. The term "business establishments" may include governmental and public entities as well.

The language of the Unruh Civil Rights Act specifically outlaws discrimination in housing and public accommodations based on sex, race, color, religion, ancestry, national origin, disability, medical condition, genetic information, marital status, sexual orientation, citizenship, primary language, or immigration status. However, the California Supreme Court has held that protections under the Unruh Act are not necessarily restricted to these characteristics.

The Act is meant to cover all arbitrary and intentional discrimination by a business establishment on the basis of personal characteristics similar to those listed above.

The law also protects the rights of individuals with disabilities to use streets, highways, and other public places; public conveyances; places of public accommodation, amusement or resort, and housing accommodations; and guide, signal, or service animals or alternative accommodations for persons with disabilities. The law clearly distinguishes between the right of a business to refuse service based on conduct as opposed to personal characteristics. The misconduct or disruptive behavior of particular individuals may be grounds for refusing to do business with them or denying them services.

## BUSINESSES COVERED UNDER THE LAW

The Unruh Civil Rights Act requires "[f]ull and equal accommodations, advantages, facilities, privileges or services in all business establishments." This includes, but is not limited to, the following places:

- Hotels and motels
- Nonprofit organizations that have a business purpose or are a public accommodation
- Restaurants
- Theaters
- Hospitals
- Barber shops and beauty salons
- Housing accommodations – including rental housing and shared-economy housing
- Public agencies
- Retail establishments

## SENIOR HOUSING

The Unruh Civil Rights Act contains provisions regulating the establishment of specialized housing designed to meet the physical and/or social needs of senior citizens.

Housing that meets these requirements is exempt from the familial status and age provisions of the Fair Employment and Housing Act and may, therefore, legally exclude households with children. Similar provisions are provided for senior citizen mobile home parks under federal fair housing laws.



# PUBLIC ACCESS DISCRIMINATION AND CIVIL RIGHTS

## FACT SHEET

## EXAMPLES OF UNRUH ACT VIOLATIONS

The following examples represent potential violations of the Unruh Civil Rights Act. Other situations may also qualify as Unruh Act violations depending on the specific circumstances:

- A hotel charges a $100 service fee only to guests of a certain racial group but not to other guests of the hotel

- A doctor refuses to treat a patient who has been diagnosed as HIV positive

- A same-sex couple is denied a table at a restaurant even though there are vacant tables available and other customers are seated immediately

- A visually impaired individual is told their service animal is not allowed in a store

- Charging men and women different prices for comparable services, such as clothing alterations, haircuts, dry cleaning, or drinks at a restaurant or bar

- Promoting a business with "ladies night" discounts on admission and services

---

**If you think you have been a victim of discrimination based on a protected class, file a complaint. A DFEH complaint must be filed within one year from the date of the last act of discrimination.**

If you have a disability that requires a reasonable accommodation, the DFEH can assist you by scribing your intake by phone or, for individuals who are Deaf or Hard of Hearing or have speech disabilities, through the California Relay Service (711), or you can contact us below.

## TO FILE A COMPLAINT

**Department of Fair Employment and Housing**
dfeh.ca.gov
Toll Free: 800.884.1684
TTY: 800.700.2320

## WHAT DFEH DOES

**The Department of Fair Employment and Housing (DFEH) enforces this law by:**

1. **Investigating harassment and discrimination complaints;**

2. **Assisting involved parties to voluntarily resolve complaints;**

3. **Prosecuting violations of the law; and**

4. **Educating Californians about the Unruh Act by providing written materials and participating in seminars and conferences.**

# EXHIBIT 4



## PROTECTIONS UNDER THE LAW

The language of the Unruh Civil Rights Act specifically outlaws discrimination in housing and public accommodations based on sex, race, color, religion, ancestry, national origin, mental or physical disability, age, medical condition, genetic information, marital status, or sexual orientation. However, the California Supreme Court has held that protections under the Unruh Act are not necessarily restricted to these characteristics. The Act is meant to cover *all* arbitrary and intentional discrimination by a business establishment on the basis of personal characteristics similar to those listed above.

The law also protects the rights of individuals with disabilities to use streets, highways, and other public places; public conveyances; places of public accommodation, amusement or resort, and housing accommodations; and guide, signal, or service animals or alternative accommodations for persons with disabilities.

The law clearly distinguishes between the right of a business to refuse service based on conduct as opposed to personal characteristics. The misconduct or disruptive behavior of particular individuals may be grounds for refusing to do business with them or denying them services.

### THE UNRUH CIVIL RIGHTS ACT PROVIDES PROTECTION FROM DISCRIMINATION BY ALL BUSINESS ESTABLISHMENTS IN CALIFORNIA

## BUSINESSES COVERED UNDER THE LAW

The Unruh Civil Rights Act requires "[f]ull and equal accommodations, advantages, facilities, privileges or services in all business establishments." This includes, but is not limited to, the following places:

- Hotels and motels
- Nonprofit organizations that have a business purpose or are a public accommodation
- Restaurants
- Theaters
- Hospitals
- Barber shops and beauty salons
- Housing accommodations
- Public agencies
- Retail establishments

### SENIOR HOUSING

The Unruh Civil Rights Act also contains provisions regulating the establishment of specialized housing designed to meet the physical and/or social needs of senior citizens.

Housing that meets these requirements is exempt from the familial status and age provisions of the Fair Employment and Housing Act and may, therefore, legally exclude households with children. Similar provisions are provided for senior citizen mobile home parks under federal fair housing laws.

## EXAMPLES OF UNRUH ACT VIOLATIONS

The following examples represent potential violations of the Unruh Civil Rights Act. Other situations may also qualify as Unruh Act violations depending on the specific circumstances.

- A hotel charges a $100 service fee only to guests of a certain racial group but not to other guests of the hotel
- A doctor refuses to treat a patient who has been diagnosed as HIV positive
- A same-sex couple is denied a table at a restaurant even though there are vacant tables available and other customers are seated immediately
- A visually impaired individual is told their service animal is not allowed in a store
- Charging men and women different prices for comparable services, such as clothing alterations, haircuts, dry cleaning, or drinks at a restaurant or bar
- Promoting a business with "ladies night" discounts on admission and services

COMPLAINTS MUST BE FILED WITHIN ONE YEAR OF THE LAST ACT OF DISCRIMINATION

# FILING A COMPLAINT

THE MISSION OF THE DEPARTMENT OF FAIR EMPLOYMENT AND HOUSING IS TO PROTECT THE PEOPLE OF CALIFORNIA FROM UNLAWFUL DISCRIMINATION IN EMPLOYMENT, HOUSING AND PUBLIC ACCOMMODATIONS, AND FROM THE PERPETRATION OF ACTS OF HATE VIOLENCE AND HUMAN TRAFFICKING.

# PUBLIC ACCESS DISCRIMINATION AND CIVIL RIGHTS



---

If you believe you are a victim of illegal discrimination, you can file a complaint with DFEH by following these steps:

1  *Contact DFEH by using the information on the back of this brochure*

2  *Be prepared to present specific facts about the alleged discrimination or harassment*

3  *Provide copies of documents that support the charges in the complaint*

4  *Keep records and documents about the incident(s), such as receipts, stubs, bills, applications, and other materials*

DFEH will conduct an impartial investigation. We represent the State of California. DFEH will, if possible, try to assist both parties to resolve the complaint.

If a voluntary settlement cannot be reached, and there is sufficient evidence to establish a violation of the law, DFEH may litigate the case in civil court.

If a court decides in favor of the complaining party, remedies may include out-of-pocket expenses, cease and desist orders, damages for emotional distress, statutory damages, attorney's fees and costs, and punitive damages. Court-ordered damages may include a maximum of three times the amount of the complainant's actual damages.

Individuals wishing to file directly in court may do so without contacting DFEH.

## FOR MORE INFORMATION

Department of Fair Employment and Housing
Toll Free: (800) 884-1684
TTY: (800) 700-2320
Online: www.dfeh.ca.gov

*Also find us on:*



If you have a disability that prevents you from submitting a written intake form on-line, by mail, or email, the DFEH can assist you by scribing your intake by phone or, for individuals who are Deaf or Hard of Hearing or have speech disabilities, through the California Relay Service (711), or call us through your VRS at (800) 884-1684 (voice).

To schedule an appointment, contact the Communication Center at (800) 884-1684 (voice or via relay operator 711) or (800) 700-2320 (TTY) or by email at contact.center@dfeh.ca.gov.

*DFEH is committed to providing access to our materials in an alternative format as a reasonable accommodation for people with disabilities when requested.*

*Contact DFEH at (800) 884-1684 (voice or via relay operator 711), TTY (800) 700-2320, or contact.center@dfeh.ca.gov to discuss your preferred format to access our materials or webpages.*

## THE FACTS

The Unruh Civil Rights Act provides protection from discrimination by all business establishments in California, including housing and public accommodations. The term "business establishments" may include governmental and public entities as well.

## WHAT DFEH DOES

The Department of Fair Employment and Housing (DFEH) enforces this law by:

① *Investigating harassment and discrimination complaints;*

② *Assisting involved parties to voluntarily resolve complaints;*

③ *Prosecuting violations of the law; and*

④ *Educating Californians about the Unruh Act by providing written materials and participating in seminars and conferences.*