1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| HARRY CROUCH, *on behalf of himself and all others similarly situated*,<br><br>                                    Plaintiff,<br><br>v.<br><br>RUBY CORP., *et al.*,<br><br>                                    Defendants. | Case No. 22-cv-711-MMA (JLB)<br><br>**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS; AND**<br><br>[Doc. No. 12]<br><br>**DENYING DEFENDANTS' MOTION TO STRIKE AS MOOT**<br><br>[Doc. No. 13] |

On May 18, 2022, Plaintiff Harry Crouch filed a putative class action complaint against Defendants Ruby Corp and Ruby Life, Inc. ("Defendants").  *See* Doc. No. 1 ("Compl.").  Defendants now move to dismiss the Complaint, *see* Doc. No. 12, and strike Plaintiff's class allegations, *see* Doc. No. 13.  Both motions are fully briefed, *see* Doc. Nos. 14–18, and the Court took the matters under submission and without oral argument pursuant to Civil Local Rule 7.1.d.1, *see* Doc. No.19.  For the reasons set forth below, the Court **GRANTS** Defendants' motion to dismiss and **DENIES** Defendants' motion to strike as moot.

# I. Background[1]

Defendants Ruby Corp and Ruby Life are Canadian companies that do business as Ashley Madison and www.AshleyMadison.com, respectively.  Compl. ¶¶ 2–3.  Ashley Madison is a dating website and cell phone application that uses global positioning system ("GPS") and IP address information to match subscribers.  *Id.* ¶ 15.  Ashley Madison allows users to create free Guest Member accounts.  *Id.*  However, in order to initiate contact, users must purchase credits.  *Id.*  Thereafter, follow-up messaging is free.  *Id.*

Generally speaking, Plaintiff alleges that Defendants unlawfully discriminate against men by charging male consumer more than females for their matchmaking services.  *Id.* at 1; *id.* ¶ 13.  According to Plaintiff, Ashely Madison prohibits men of all sexual orientations from initiating contact with women without first purchasing credits.  *Id.* ¶ 16.  Plaintiff contends that women do not have to pay to initiate contact with men.  *Id.*  Instead, if a woman wishes to initiate contact with a man, she sends a "collect" message indicating interest, and the man is then required to use his credits to open the woman's "collect" message.  *Id.*  The man must then use more credits to respond.  *Id.*

Plaintiff brings seven causes of action against Defendants on behalf of himself and similarly situated persons.  The seven claims fall into three categories.  Claims 1–3 are for violation of California's Unruh Civil Rights Act, Cal. Civ. Code § 51, for denial of equal treatment based upon: (1) sex; (2) sexual orientation; and (3) gender identity.  Claims 4–6 are for violation of California Civil Code § 51.5 for: (4) sex discrimination; (5) sexual orientation discrimination; and (6) gender identity discrimination.  Lastly, Claim 7 is for price discrimination based on gender in violation of the Gender Tax Repeal Act of 1995, Cal. Civ. Code § 51.6.

---

[1] Because this matter is before the Court on a motion to dismiss, the Court must accept as true the allegations set forth in the Complaint.  *See Hosp. Bldg. Co. v. Trs. of Rex Hosp.*, 425 U.S. 738, 740 (1976).

## II. Requests for Judicial Notice

As an initial matter, Plaintiff has filed a request for judicial notice in support of his opposition to Defendants' motion to dismiss.  *See* Doc. No. 14-2.

Pursuant to the Federal Rules of Evidence, courts may judicially notice an adjudicative fact if it is not subject to reasonable dispute in that it is either (1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned.  Fed. R. Evid. 201(b); *see also Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 999 (9th Cir. 2018) (quoting Fed. R. Evid. 201(b)).

Plaintiff asks the Court to judicially notice eight exhibits: (1) the complaint filed in *Avid Life Media, Inc., et al. v. Marital Affair Ltd.*, C.D. Cal. Case No. 2:12-cv-07604-MMM-MAN; (2) the complaint filed in *Avid Life Media, Inc., et al. v. Digisec Media As et al.*, C.D. Cal. Case No. 2:12-cv-8602-JAK-MAN; (3) *Avid Life Media, Inc., et al. v. Infostream Group, Inc. et al.*, C.D. Cal. Case No. 2:12-cv-9201-DDP-AJW; (4) the complaint filed in *Lewis v. Avid Dating Life Inc., et al.*, C.D. Cal. 2:14-cv-763-DMG-MRW (the "*Lewis* Case"); (5) a motion to compel arbitration in the *Lewis* Case; (6) the stipulation for dismissal in the *Lewis* Case; and (7–8) Ontario Ministry of Government and Consumer Services website pages.  Defendants oppose Plaintiff's requests.  Doc. No. 16.

Defendants first challenge Exhibits 1–6, arguing that the Court should not take judicial notice of the alleged facts contained in pleadings in other legal proceedings.  Doc. No. 16 at 2–3.  "Courts may take judicial notice of their own records, and may also take judicial notice of other court proceedings if they 'directly relate to matters before the court.'"  *Stewart v. Kodiak Cakes, LLC*, 568 F. Supp. 3d 1056, 1063 (S.D. Cal. 2021) (quoting *Hayes v. Woodford*, 444 F. Supp. 2d 1127, 1136–37 (S.D. Cal. 2006)).  For the purpose of the present motion and the Court's determination of whether it has personal jurisdiction over Defendants, the existence of these cases and filings appear to be relevant.  Moreover, the existence of these publicly recorded filings is not subject to

reasonable dispute.  Consequently, the Court **GRANTS** Plaintiff's request and judicially notices Exhibits 1–6.  That said, the Court does not accept the content of these filings for the truth of the matters asserted therein.  *See, e.g., NuCal Foods, Inc. v. Quality Egg LLC*, 887 F. Supp. 2d 977, 984 (E.D. Cal. 2012).

Turning to Exhibits 7 and 8, while Defendants concede that material published on a government website may be subject to judicial notice, they nonetheless argue that the facts contained therein are not verifiable.  Doc. No. 16 at 4.

Exhibits 7 and 8 are screenshots of the search results for "Ruby Corp" and "Ruby Life Corp" on the Ontario Ministry of Government and Consumer Services website.  Defendants do not argue that these exhibits are not true and correct copies of the website pages.  Instead, Defendants take issue with the adjudicative fact allegedly contained therein that Ruby Corp was "previously known as" Avid Life Media, Inc. and that Ruby Life was "previously known as" Avid Dating Life, Inc.  Doc. No. 16 at 4.  For example, Defendants assert that the two profiles representing these notations list the status of the corporations as "Inactive."  *Id.*

However, Defendants do not argue or dispute the fact that these entities are their predecessors.  In fact, in their reply, Defendants concede that they are.  *See, e.g.*, Doc. No. 17 at 2, 4–6.  Accordingly, the Court finds that Exhibits 7 and 8 are governmental sources whose accuracy cannot be, and are not, reasonably questioned.  Accordingly, the Court **GRANTS** Plaintiff's request as to Exhibits 7 and 8.

### III. MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

Federal Rule of Civil Procedure 12(b)(2) provides the district court with the authority to dismiss an action for lack of personal jurisdiction.  *Data Disc, Inc. v. Systems Tech. Assoc., Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977).  Plaintiff has the burden of demonstrating personal jurisdiction over Defendants.  *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004).  "Where, as here, the defendant's motion is based on written materials rather than an evidentiary hearing, the plaintiff need only make a prima facie showing of jurisdictional facts to withstand the motion to

dismiss." *Mavrix Photo, Inc. v. Brand Techs., Inc.*, 647 F.3d 1218, 1223 (9th Cir. 2011) (citing *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1127 (9th Cir. 2010)).  In such cases, courts "only inquire into whether [the plaintiff's] pleadings and affidavits make a prima facie showing of personal jurisdiction." *Caruth v. International Psychoanalytical Ass'n*, 59 F.3d 126, 128 (9th Cir. 1995).  Although the plaintiff cannot "simply rest on the bare allegations of its complaint," *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784, 787 (9th Cir. 1977), "uncontroverted allegations in the complaint must be taken as true." *Schwarzenegger*, 374 F.3d at 800.  In ruling on a Rule 12(b)(2) motion, the pleadings are to be viewed in a light most favorable to plaintiff, *see Caruth*, 59 F.3d at 128 n.1, and "the court resolves all disputed facts in favor of the plaintiff," *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006).

"Federal courts ordinarily follow state law in determining the bounds of their jurisdiction over persons." *Daimler AG v. Bauman*, 571 U.S. 117, 125 (2014).  Because "California's long-arm statute allows the exercise of personal jurisdiction to the full extent permissible under the U.S. Constitution," the Court's inquiry centers on whether exercising jurisdiction comports with due process. *Id.*; *see also* Cal. Code Civ. Proc. § 410.10 ("A court of this state may exercise jurisdiction on any basis not inconsistent with the Constitution of this state or of the United States.").  Due process requires that the defendant "have certain minimum contacts" with the forum state "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Wash.*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)).

"Depending on the strength of those contacts, there are two forms that personal jurisdiction may take: general and specific." *Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015) (citing *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008)).  The presence of either general or specific jurisdiction will sustain the exercise of personal jurisdiction over a defendant. *Rano v. SIPA Press, Inc.*, 987 F.2d 580, 587 (9th Cir. 1993).

In his Complaint, Plaintiff does not specify between general or specific jurisdiction and instead generally asserts that "[b]ecause Defendants conducted business within the State of California at all times relevant, personal jurisdiction is established."  Compl. ¶ 12.  Defendants argue that the Court lacks both.[2]  *See* Doc. No. 12-1 at 7.

## A.    General Personal Jurisdiction

A court has general personal jurisdiction over a corporate defendant in a forum where "the corporation is fairly regarded as at home."  *Daimler*, 571 U.S. at 137 (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 924 (2011)).  General jurisdiction over a corporation is appropriate only in the forum where the corporation is incorporated or has its principal place of business, or in exceptional cases where the corporation's contacts with the forum state are "so constant and pervasive as to render [it] essentially at home in the forum State."  *Id.* at 122 (quoting *Goodyear*, 564 U.S. at 919).  Merely engaging "in a substantial, continuous, and systematic course of business" in a forum is insufficient for a court to exercise general personal jurisdiction over the defendant in that forum.  *Id.* at 138–39.  "As *International Shoe* itself teaches, a corporation's "continuous activity of some sorts within a state is not enough to support the demand that the corporation be amenable to suits unrelated to that activity."  *Id.* at 132 (quoting *International Shoe*, 326 U. S. at 318).  As the Ninth Circuit explained in *Schwarzenegger*:

> For general jurisdiction to exist over a nonresident defendant such as Fred Martin, the defendant must engage in "continuous and systematic general business contacts," *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 416, 80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984) (citing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 96 L. Ed. 485, 72 S. Ct. 413, 63 Ohio Law Abs. 146 (1952)), that "approximate physical presence" in the

---

[2] While the Court agrees with Defendants, *see* Doc. No. 12-1 at 14 fn. 4, that personal jurisdiction must be established as to each defendant individually, *see Rush v. Savchuk*, 444 U.S. 320, 331–32 (1980), Defendants have made no effort to distinguish themselves and their contacts and so the Court conducts one analysis.

> forum state. *Bancroft & Masters*, 223 F.3d at 1086. This is an exacting standard, as it should be, because a finding of general jurisdiction permits a defendant to be haled into court in the forum state to answer for any of its activities anywhere in the world. *See Brand v. Menlove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986) (collecting cases where general jurisdiction was denied despite defendants' significant contacts with forum).

*Schwarzenegger*, 374 F.3d at 801.

It is undisputed that Defendants are incorporated in Ontario, Canada and have their principal place of business there. Doc. No. 12-2 ("Deng Decl.") ¶ 6; Compl. ¶¶ 2–3. Consequently, the Court presumptively lacks general personal jurisdiction over Defendants. Plaintiff nonetheless seems to argue that this is "an exceptional case." In particular, Plaintiff contends that Defendants are "at home" in California. Doc. No. 14 at 15.

According to the Complaint, both Defendants, while organized under the laws of Canada, "ha[ve] been doing business throughout California, including San Diego County, California," as Ashley Madison and www.AshleyMadison.com. Compl. ¶¶ 2, 3. Plaintiff also pleads that "[b]ecause Defendants conducted business within the State of California at all times relevant, personal jurisdiction is established." *Id.* ¶ 12.

Plaintiff contends in opposition that Defendants began several amalgamations of themselves in July 2016 following the well-known hacking scandal of Ashley Madison. *Id.* at 7. Namely, Avid Life Media, Inc. ("Avid Media") and Avid Dating Life, Inc. ("Avid Dating") became Ruby Corp. and Ruby Life, respectively. Doc. No. 14 at 7; *see also* Pl. Exs. 7–8.

However, before the corporate amalgamations, Avid Media and Avid Dating filed suit in California federal court three times.[3] In September 2012, the two corporations

---

[3] Avid Media and Avid Dating's contacts with California may only be imputed to Ruby Corp and Ruby Life if Canadian laws would hold them, as successors, liable for the actions of their predecessors. *See Hammond v. Monarch Inv'rs, LLC*, No. 09-CV-2055W (WVG), 2010 U.S. Dist. LEXIS 66595, at *7–8 (S.D. Cal. July 2, 2010) (first citing *Williams v. Bowman Livestock Equip. Co.*, 927 F.2d 1128, 1132

sued two United Kingdom companies in the Central District in *Avid Life Media, Inc., et al. v. Martial Affair LTD*, C.D. Cal. Case No. 2:12-cv-07604-MMM-MAN (the "*Marital Affair* Case").  Pl. Ex. 1.  In the *Marital Affair* Case, Avid Media and Avid Dating brought federal claims for trade dress and trademark infringement and false destination of origin and unfair competition, as well as two California state law claims for common law unfair competition and unfair competition in violation of California Business and Professions Code § 17200 *et seq.  Id.*

In October 2012, Avid Media and Avid Dating similarly filed suit in the Central District against a Norwegian company in *Avid Life Media, Inc., et al. v. Digisec Media, et al.*, C.D. Cal. Case No. 2:12-cv-8602-JAK-MAN (the "*Digisec* Case").  Pl. Ex. 2.  The claims in the *Digisec* Case are essentially the same as those presented in the *Marital Affair* Case—Avid Media and Avid Dating asserted trade dress infringement, trade dress dilution, and false destination of origin and unfair competition claims under federal law, as well as California state law claims for unfair competition under common law and California Business and Professions Code § 17200.  *Id.*  Also in October 2012, Avid Media and Avid Dating initiated a breach of contract/defamation suit against a Nevada corporation in the Central District, *Avid Life Media, Inc. v. Infostream Group, Inc.*, C.D. Cal. Case No. 2:12-cv-9201-DDP-AJW.  Pl. Ex. 3.

In addition to these three lawsuits, in January 2014, Avid Media and Avid Dating removed the case of *Lewis v. Avid Dating Life, Inc., et al.*, C.D. Cal. Case No. 2:14-cv-00763-DMG-MRW from California state court to the Central District Court pursuant to the Class Action Fairness Act of 2005.  Pl. Ex. 4.  The *Lewis* Case involved virtually the same allegations and claims at issue in the present case: the *Lewis* Case involved a putative class action against Avid Media and Avid Dating as then-owners and operators

---

(10th Cir. 1991); and then citing *LiButti v. U.S.*, 178 F.3d 114, 124 (2d Cir. 1999) (State's successor liability laws establish personal jurisdiction)).  According to Plaintiff, under Canadian law, an amalgamated corporation assumes all liabilities of its predecessors, *see* Doc. No. 14 at 7 fn. 1, a point that Defendants do not apparently dispute.

of Ashley Madison for gender and sex discrimination under the Unruh Act, the Gender Tax Repeal Act of 1995, California Civil Code § 51.5, and unfair competition. *Id.*

According to Plaintiff, Avid Media and Avid Dating never challenged the California federal courts' personal jurisdiction over them in these cases and therefore have waived any objection to the Court's general personal jurisdiction in this case.[4]  Doc. No. 14 at 17.  However, in the Ninth Circuit, a party only waives the personal jurisdiction defense if they fail to raise it at the Rule 12 stage when it was available.  *See Moser v. Benefytt, Inc.*, 8 F.4th 872, 877 (9th Cir. 2021) (citing Fed. R. Civ. P. 12(h)(1)(A), (g)(2)).  Because Defendants have duly raised the defense at this time—their first Rule 12 motion in this action—they have not waived the defense under the Federal Rules of Civil Procedure.  Moreover, Plaintiff fails to identify authority supporting the contention that utilizing a federal court as the venue for prior litigation amounts to a waiver or forfeiture of the personal jurisdiction defense in future litigation.  *Cf. Brooks v. Y.Y.G.M. SA*, No. 2:21-cv-00078-JAM-CKD, 2021 U.S. Dist. LEXIS 225412, at *9 (E.D. Cal. Nov. 22, 2021) (finding that authority does not support the conclusion that the mere act of filing a complaint can support a finding of specific personal jurisdiction in an unrelated case).

As noted above, *Daimler* left open "the possibility that in an exceptional case . . . a corporation's operations in a forum other than its formal place of incorporation or principal place of business may be so substantial and of such a nature as to render the corporation at home in that State."  571 U.S. at 139 n.19.  However, "'only a limited set of affiliations with a forum will render a defendant amenable to' general jurisdiction in that State."  *Bristol-Myers Squibb Co. v. Superior Court*, 137 S. Ct. 1773, 1780 (2017) (quoting *Daimler*, 517 U.S. at 137).

---

[4] The Court is also informed and takes judicial notice of the Multidistrict Litigation case of *In re Ashley Madison Customer Data Sec. Breach Litig.*, 4:15-md-02669-JAR, consolidated in the Eastern District of Missouri against Avid Media and Avid Dating, as well as numerous individuals, following the hacking scandal.

It is unclear whether these prior lawsuits fall within the "limited set of affiliations" contemplated by the Supreme Court. But even assuming they do, the Court cannot say that this conduct alone rises to the requisite level of continuous and systematic for general personal jurisdiction. At best, it would appear that four times in the last decade Defendants' predecessors sued in or consented to suit in the Central District of California. However, this contact does not equate to Defendants' "approximate physical presence" in California absent more.

The Court must still conduct "an appraisal of [Defendants'] activities in their entirety, nationwide and worldwide" in order to determine if their contacts with California are sufficient for general jurisdiction because "[a] corporation that operates in many places can scarcely be deemed at home in all of them." *Daimler*, 517 U.S. at 139 n.20. Namely, in the Ninth Circuit, courts consider the non-resident corporation's "[l]ongevity, continuity, volume, economic impact, physical presence, and integration into the state's regulatory or economic markets." *Mavrix*, 647 F.3d at 1224 (quoting *Tuazon v. R.J. Reynolds Tobacco Co*., 433 F.3d 1163, 1172 (9th Cir. 2006) (internal quotation marks omitted)).

Plaintiff has not demonstrated that Defendants have the requisite business contacts in California. The evidence on this point is scant. According to "The Official Blog of Ashley Madison" three of "The Top 20 Cities for Infidelity" are in California.[5] Doc. No. 14 at 9. A 2015 Los Angeles Times article reported that nearly 50 current and former California state workers, and 18 Los Angeles County employees, were subscribers. *See id.* Further, at some point in time, Ashley Madison's Twitter profile represented that the service had 75 million subscribers. *Id.* Plaintiff contends that "one would surmise thousands of those subscribers are in California doing business with and

---

[5] Defendants' argument that this blog post predates the class period, *see* Doc. No. 17 at 7, is not relevant to the general personal jurisdiction analysis because the Court does not consider the blog posting as an advertisement, but as evidence of Defendants' contacts in the state, and Plaintiff generally contends that Defendants' contacts are likely to have increased over the years, *see* Doc. No. 14 at 8.

exchanging communications, money, and financial information such as credit card numbers, and computer files with Ashley Madison's offices and servers on a daily basis." *Id.* Even assuming Defendants have thousands of subscribers in California, this hardly amounts to the level of contacts required for exercising general personal jurisdiction. *See Martinez v. Aero Caribbean*, 764 F.3d 1062, 1070 (9th Cir. 2014) ("Its California contacts are minor compared to its other worldwide contacts.").

While Ashley Madison is available in California, it is also available to consumers worldwide. Deng Decl. ¶ 19. Defendants do not have any offices, employees, operations, or property in California. Deng Decl. ¶¶ 7–8, 10–11. Defendants do not maintain mailing addresses, bank accounts, or investments in California, nor are they registered to do business here. *Id.* ¶¶ 12–13. Defendants are not licensed or regulated by any California governmental agency. *Id.* ¶ 15. Defendants' officers direct, control, and coordinate the companies' activities from Canada and all of the Ashley Madison computer servers are located in Canada. *Id.* ¶¶ 6, 9.

It may be that Defendants' predecessors felt so "at home" in Los Angeles that they chose to litigate federal and California state law claims in the Central District. But absent more—allegations in the Complaint or facts presented by way of affidavit suggesting that Defendants have a continuous and systematic business presence in California—Plaintiff has not met his prima facie burden of demonstrating that Defendants are subject to the Court's general personal jurisdiction. Consequently, the Court **GRANTS** Defendants' motion on this basis.

## B.  Specific Personal Jurisdiction

Defendants also challenge the Court's specific personal jurisdiction over them. Doc. No. 12-1 at 14. Plaintiff contends that Defendants are subject to specific personal jurisdiction.[6]  Doc. No. 14 at 17.

---

[6] Plaintiff cannot demonstrate specific personal jurisdiction through Defendants' predecessors' prior litigation. *See Brooks*, 2021 U.S. Dist. LEXIS 225412, at *9 ("Plaintiff does not cite any caselaw

The Ninth Circuit has set forth a three-part test to determine whether a district court's exercise of specific jurisdiction comports with due process:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws; (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Picot*, 780 F.3d at 1211 (citing *Schwarzenegger*, 374 F.3d at 802).  Plaintiff bears the burden of satisfying the first two prongs of the test for specific jurisdiction.  *See CollegeSource, Inc. v. AcademyOne, Inc.*, 653 F.3d 1066, 1076 (9th Cir. 2011).  If he does so, the burden then shifts to the defendant to "set forth a 'compelling case' that the exercise of jurisdiction would not be reasonable."  *Id.* (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 477 (1985)).

The Ninth Circuit has emphasized that under the first prong of the specific personal jurisdiction test, purposeful availment and purposeful direction are two separate and distinct concepts.  Specifically, "[t]he exact form of our jurisdictional inquiry depends on the nature of the claim at issue."  *Picot*, 780 F.3d at 1212.  For claims sounding in contract, courts generally apply the "purposeful availment" analysis, which considers whether a defendant has purposefully availed himself of the privilege of conducting business with the forum state.  *Id.* (citing *Schwarzenegger*, 374 F.3d at 802).  For claims sounding in tort, courts apply a "purposeful direction" test, and analyze whether the

---

standing for the proposition that the mere act of filing a complaint can support a finding of specific personal jurisdiction in an unrelated case. However, there is caselaw suggesting the contrary.") (citing *Ibrani v. Mabetex Project Eng'g*, Case Number:3:00-cv-00107, 2002 U.S. Dist. LEXIS 10016, at *19 (N.D. Cal. May 31, 2002)).

defendant "has directed his actions at the forum state, even if those actions took place elsewhere." *Id.* (citing *Schwarzenegger*, 374 F.3d at 802–03).

When a plaintiff relies on specific jurisdiction, he must establish that jurisdiction is proper for "each claim asserted against a defendant." *Action Embroidery Corp. v. Atl. Embroidery, Inc.*, 368 F.3d 1174, 1180 (9th Cir. 2004). That said, if personal jurisdiction exists over one claim, but not others, the district court may exercise pendent personal jurisdiction over any remaining claims that arise out of the same "common nucleus of operative facts" as the claim for which jurisdiction exists. *Id.* at 1181.

### 1.   Purposeful Direction

The parties appear to agree that Plaintiff's statutory, discrimination claims are more akin to tort rather than a contract dispute and therefore the Court applies the purposeful direction test at step one. *See* Doc. Nos. 12-1 at 15, 14 at 17–18; *see also Brooks*, 2021 U.S. Dist. LEXIS 225412, at *7 (applying the purposeful direction test to a case involving discrimination claims under the ADA and Unruh Act).

Courts in the Ninth Circuit apply an "effects" test to determine whether a defendant purposefully directed his activities at the forum, which focuses on where "the defendant's actions were felt, whether or not the actions themselves occurred within the forum." *CollegeSource*, 653 F.3d at 1077 (quoting *Yahoo! Inc. v. La Ligue Contre le Racisme*, 433 F.3d 1199, 1206 (9th Cir. 2006) (en banc) (internal quotation marks omitted)); *see also Schwarzenegger*, 374 F.3d at 803. The "effects" test is derived from the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), and requires the defendant to have allegedly: (1) committed an intentional act; (2) expressly aimed at the forum state; and (3) causing harm that the defendant knows is likely to be suffered in the forum state. *See id.*

### a.   Intentional Act

Defendants do not challenge the "intentional act" alleged here. In any event, the Court finds this part of the *Calder* test appears to be satisfied. The Ninth Circuit has explained that the "intentional act" requirement means an "actual, physical act in the real

world"; it does not require "an intent to accomplish a result or consequence of that act." *Brayton*, 606 F.3d at 1128 (quoting *Schwarzenegger*, 374 F.3d at 806) (internal quotation marks omitted).  Plaintiff duly alleges that Defendants' business model, requiring that male subscribers pay to initiate and respond to messages while female subscribers need not purchase credits but instead can send "collect" messages, *see* Compl. ¶¶ 15–16, violates California law.  Creating and implementing such an allegedly unlawful business model is an actual, physical, real-world act and thus is an intentional act under *Calder*.

### b.   Expressly Aimed

Next, the Court considers whether Defendants "expressly aimed" this act at California.  Defendants argue that they did not.  Doc. No. 12-1 at 17.

"Courts have 'struggled with the question whether tortious conduct on a nationally accessible website is expressly aimed at any, or all, of the forums in which the website can be viewed.'"  *Bradley v. T-Mobile US, Inc.*, No. 17-cv-07232-BLF, 2020 U.S. Dist. LEXIS 44102, at *45 (N.D. Cal. Mar. 13, 2020) (quoting *Mavrix*, 647 F.3d at 1229).  Courts in the Ninth Circuit examining this factor often consider the level of website "activity" using the sliding scale approach established in *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997).  On one end of the scale are passive websites, which are accessible to anyone and merely display information.  *See Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997).  Interactive websites, on the other end,[7] are websites where users can exchange information and that function for a commercial purpose.  *See AAA v. Darba Enters.*, No. C 09-00510 SI, 2009 U.S. Dist.

---

[7] The true two ends of the scale identified in *Zippo* are passive websites and active websites.  *See Mavrix*, 647 F. 3d at 1226–27 (discussing *Zippo*'s sliding scale).  Active websites are those "'where a defendant clearly does business over the Internet' and 'enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, which support [general] jurisdiction.'"  *Id.* at 1226 (quoting *Zippo*, 952 F. Supp. at 1224).  However, when employing the *Zippo* sliding scale in the context of specific jurisdiction, most district courts in this circuit consider the two ends to be passive and interactive—likely because, as noted in *Mavrix*, an active website will give rise to general jurisdiction.

LEXIS 37564, at *11 (N.D. Cal. Apr. 21, 2009) (citing *Cybersell*, 130 F.3d at 418).
"[I]nteractive websites refuse to easily be categorized and force courts to examine their
level of interactivity and commercial capacities." *Scott v. Domus Constr. & Design, Inc.*,
No. 3:21-cv-00623-BEN-AHG, 2021 U.S. Dist. LEXIS 227024, at *25 (S.D. Cal. Nov.
24, 2021).

"[M]aintenance of a passive website alone cannot satisfy the express aiming
prong." *Mavrix*, 647 F.3d at 1229 (quotation marks and citation omitted).  For either a
passive or "an interactive website to confer personal jurisdiction, a plaintiff must allege
'something more.'" *Thermo Life Int'l, Ltd. Liab. Co. v. NetNutri.com Ltd. Liab. Co.*, 813
F. App'x 316, 318 (9th Cir. 2020) (first quoting *Mavrix*, 647 F.3d at 1229–31; and then
citing *Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1020 (9th Cir. 2002)).  "In
determining whether a nonresident defendant has done 'something more,' we have
considered several factors, including the interactivity of the defendant's website; the
geographic scope of the defendant's commercial ambitions; and whether the defendant
'individually targeted' a plaintiff known to be a forum resident." *Mavrix*, 647 F.3d at
1229 (internal citations omitted).

To the extent Defendants argue that Ashley Madison is not an interactive website,
*see* Doc. No. 17 at 7–8, the Court is unpersuaded.  An interactive website is, at bottom,
one where "users can exchange information with the host computer." *Cybersell*, 130
F.3d at 418; *see also CollegeSource*, 653 F.3d at 1075.  That subscribers interact "with
*each other*" and that "Defendants are not the ones engaging in [] communications" with
users, Doc. No. 17 at 7 (emphasis in original), is of no consequence.  Ashley Madison
subscribers create and maintain profiles and communicate using Defendants' host
computers—this is common sense. *See* Comp. ¶¶ 2–4.  Further, as noted above, courts in
the Ninth Circuit frequently reiterate the concept that "interactive websites" are those that
"function for commercial purposes and where users exchange information." *Darba
Enters.*, 2009 U.S. Dist. LEXIS 37564, at *11 (citing *Cybersell*, 130 F.3d at 418); *see
also Loomis v. Slendertone Distribution, Inc.*, 420 F. Supp. 3d 1046, 1069 (S.D. Cal.

2019); *j2 Cloud Servs. v. Fax87*, No. 13-05353 DDP (AJWx), 2017 U.S. Dist. LEXIS 64064, at *19 (C.D. Cal. Apr. 27, 2017).

Although Defendants do not sell products on their website, they sell a service, *see, e.g.*, Compl. ¶ 5, that subscribers pay for by purchasing credits to communicate with the matches Defendants provide, *see id.* ¶ 19; *see also* Compl. Ex. A, and users exchange information in the form of messages, *see, e.g.*, *id.* ¶¶ 15–16. Moreover, Defendants use subscribers' cell phone GPS and computer IP address information "to assist in the creation of the subscribers' profiles" and importantly, as Ashley Madison is in the service of matchmaking, to "find prospective matches for each subscriber." Compl. ¶ 15. Consequently, Ashley Madison is an interactive website.

That said, the Court cannot conclude on this record that there is "something more." In opposition, Defendants contend that they did not tailor any marketing or advertising material to California, nor did their marketing materials feature any content or themes specific to California. Deng Decl. ¶¶ 16–17. Plaintiff on the other hand asserts that Defendants did target California, as they purchased and displayed a billboard advertisement near Los Angeles International Airport, and that Ashley Madison's founder and former CEO stated that he chose this "high-traffic location because he was looking to expand Ashley Madison in Los Angeles." Doc. No. 14 at 10. Moreover, Plaintiff contends that by marketing on its blog and Twitter page "The Top 20 Cities for Infidelity," Defendants specifically advertised to and enticed new consumers in those areas, which includes California as three cities in California are on the list. *Id.* at 20. However, Defendants point out in reply that these advertisements predate the class period. *See* Doc. No. 17 at 7. Regardless, none of this information is in the Complaint or presented as evidence by way of affidavit.

To that end, Plaintiff does not factually allege in his Complaint or by affidavit how Defendants targeted California—*i.e.*, what amount of Defendants' business comes from California, anything about Defendants' business that is particular to California, what advertisements during the relevant time period were directed at Californians, or any other

information to suggest that California was targeted or exploited, specifically.  *See Mavrix*, 647 F.3d at 1230.  Consequently, absent more information on the nature and quality of the Defendants' commercial activity, the Court cannot conclude that Defendants expressly aimed their conduct at California.

### c.   Harm Knowingly Caused in California

For the sake of completeness, the Court proceeds by addressing the remaining *Calder* test factor.  Defendants also maintain that any alleged harm is not "jurisdictionally sufficient."  Doc. No. 12-1 at 18.  To the extent Defendants argue that Plaintiff must show that the "'brunt of the harm was suffered' in California," Doc. No. 12-1 at 18 (citing *Picot*, 780 F.3d at 1214–15), in the Ninth Circuit, this element "*does not* require that the 'brunt' of the harm be suffered in the forum, as some previous cases had suggested, and that this element may be established even if 'the bulk of the harm' occurs outside the forum."  *Brayton*, 606 F.3d at 1131 (quoting *Yahoo!*, 433 F.3d at 1207) (emphasis added).

The third part of the *Calder* test is satisfied when the defendant's "intentional act has foreseeable effects in the forum."  *Id.* (internal quotation marks and citation omitted). The intentional act of creating an allegedly discriminatory pricing/membership business model certainly had foreseeable effects in California.  There is no genuine dispute that Defendants have some amount of subscribers in California.  To be sure, they represented on their blog and on Twitter that three of the top 20 cities in the United States for infidelity are in California, *see* Doc. No. Doc. No. 14 at 9, and it is reasonable to infer that this data came from a statistical review of Ashley Madison's subscriptions.  Further, California has codified numerous laws prohibiting this exact type of business behavior and it is a heavily litigated area of state law.  Moreover, Defendants' predecessors were sued in 2014 on a virtually identical basis and theory of liability presented in the case here: that Ashley Madison discriminates on the basis of sex and gender by not permitting men to communicate with women without purchasing credits, while women can communicate with men for free.  *See* Pl. Ex. 4.  Consequently, not only was it foreseeable

that this intentional act would harm Californians' statutorily protected rights to be free from gender and pricing discrimination, but viewing the evidence and allegations in Plaintiff's favor at this juncture, Defendants likely did know that such harm would result.

### 2.   Summary

While it appears that Plaintiff has made a prima facie showing as to the first and third *Calder* test elements, he has not met his burden as to the second, "expressly aimed" element and thus fails to satisfy the first prong of specific personal jurisdiction. Accordingly, the Court **GRANTS** Defendants' motion on this basis.  Because Plaintiff has not met his burden as to the purposeful direction prong, the Court declines to reach the remaining two prong of the specific personal jurisdiction analysis.

## C.   Conclusion

In sum, Defendants are not incorporated in California, nor is their principal place of business here.  And Plaintiff has not met his prima facie burden of demonstrating that Defendants have the requisite systematic and continuous business contacts with California such that the Court can say they are effectively "at home" here for general personal jurisdiction.

Moreover, while Plaintiff has demonstrated that Defendants operate an interactive website, Plaintiff has not provided sufficient information regarding their California-related business contacts and activities such that the Court can determine Defendants purposefully directed their conduct at California.  Consequently, Plaintiff fails to make a prima facie showing of the first specific personal jurisdiction prong.

Accordingly, the Court **GRANTS** Defendants' motion.  Because the Court cannot say that amendment would be futile, dismissal is with leave to amend.  *See McKesson HBOC, Inc. v. N.Y. State Common Ret. Fund, Inc.*, 339 F.3d 1087, 1090 (9th Cir. 2003) (noting that in the event of a jurisdictional defect, dismissal without leave to amend is proper only if it is clear that the complaint could not be saved by any amendment); *see also Grigsby v. CMI Corp.*, 765 F.2d 1369, 1372 n.5 (9th Cir. 1985) (noting that dismissals for lack of personal jurisdiction are to be without prejudice).

**D.   Request for Jurisdictional Discovery**

In opposition, Plaintiff asks the Court to grant him leave to amend his complaint or conduct limited jurisdictional discovery should the Court grant Defendants' motion. Doc. No. 14 at 27.  Defendants state that jurisdictional discovery is not necessary.  Doc. No. 17 at 8.

Jurisdictional discovery "may be appropriately granted where pertinent facts bearing on the question of jurisdiction are controverted or where a more satisfactory showing of the facts is necessary." *Data Disc*, 557 F.2d at 1285 n.1.  Mere speculation that discovery "might yield jurisdictionally relevant facts" is insufficient, however. *Boschetto*, 539 F.3d at 1020.  Further, a court need not permit jurisdictional discovery "where a plaintiff's claim of personal jurisdiction appears to be both attenuated and based on bare allegations in the face of specific denials made by the defendants." *Terracom v. Valley Nat. Bank*, 49 F.3d 555, 562 (9th Cir. 1995) (citing *Rich v. KIS Cal., Inc.*, 121 F.R.D. 254, 259 (M.D.N.C. 1988)).  A court is justified in denying jurisdictional discovery" when it is clear that further discovery would not demonstrate facts sufficient to constitute a basis for jurisdiction." *Wells Fargo & Co. v. Wells Fargo Express Co.*, 556 F.2d 406, 430 n.24 (9th Cir. 1977).

A plaintiff who seeks jurisdictional discovery is not required to first make a prima facie showing that jurisdiction actually exists.  Instead, courts in this Circuit usually hold that a plaintiff must make at least a colorable showing that personal jurisdiction exists. *See Mitan v. Feeney*, 497 F.Supp.2d 1113, 1119 (C.D. Cal. 2007).  "This 'colorable' showing should be understood as something less than a prima facie showing and could be equated as requiring the plaintiff to come forward with 'some evidence' tending to establish personal jurisdiction over the defendant." *Id.*; *see also Martinez v. Manheim Central California*, Case No. 10-CV-1511, 2011 U.S. Dist. Lexis 41666 at *10 (E.D. Cal. Apr. 18, 2011) (noting that "district courts in this circuit have required a plaintiff to establish a 'colorable basis' for personal jurisdiction before discovery is ordered"); *see also NuboNau, Inc. v. NB Labs, Ltd.*, No. 10cv2631-LAB (BGS), 2011 U.S. Dist. LEXIS

125410, at *7–9 (S.D. Cal. Oct. 31, 2011).

It is clear that a more satisfactory showing of the facts is necessary for the Court to properly analyze the issue of personal jurisdiction.  Moreover, Plaintiff may have made a colorable showing as to the Court's ability to exercise personal jurisdiction over Defendants.  However, Plaintiff does not explain or identify what discovery he seeks.  Accordingly, the Court **DENIES** Plaintiff's request without prejudice.

### IV. MOTION TO STRIKE

Defendants also move to strike Plaintiff class allegations.  *See* Doc. No. 13-1 at 5.  A Rule 12(f) motion to strike allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter."  Fed. R. Civ. P. 12(f).  Its function is to avoid unnecessary expenditures "that must arise from litigating spurious issues by dispensing with those issues prior to trial."  *Sidney-Vinstein v. A.H. Robins Co.*, 697 F.2d 880, 885 (9th Cir. 1983).  Class allegations may be stricken at the pleading stage.  *Kamm v. Cal. City Dev. Co.*, 509 F.2d 205, 212 (9th Cir. 1975).  "However, motions to strike class allegations are generally disfavored because 'a motion for class certification is a more appropriate vehicle.'"  *Lyons v. Coxcom, Inc.*, 718 F. Supp. 2d 1232, 1235–36 (S.D. Cal. 2009) (quoting *Thorpe v. Abbott Labs., Inc.*, 534 F. Supp. 2d 1120, 1125 (N.D. Cal. 2008)).  Thus, "the granting of motions to dismiss class allegations before discovery has commenced is rare."  *Id.* (first citing *Thorpe*, 534 F. Supp. 2d at 1125; and then quoting *In re Wal-Mart Stores, Inc. Wage & Hour Litig.*, 505 F. Supp. 2d 609, 615 (N.D. Cal. 2007)); *see also Taylor v. Shutterfly, Inc.*, No. 18-cv-00266-BLF, 2020 WL 1307043, at *4 (N.D. Cal. Mar. 19, 2020) ("Thus, even if a motion to strike class allegation is considered at the pleading stage, it may only be granted under 'rare circumstances' where 'the complaint demonstrates that a class action cannot be maintained on the facts alleged.'" (quoting *Tasion v. Commc'ns, Inc. v. Ubiquiti Networks, Inc.*, No. C-13-1803 EMC, 2014 WL 1048710, at *3 (N.D. Cal. Mar. 14, 2014))); *In re Nexus 6P Prods. Liab. Litig.*, 293 F. Supp. 3d 888, 960 (N.D. Cal. 2018) ("Even courts that have been willing to entertain such a motion early in the proceedings

'have applied a very strict standard to motions to strike class allegations on the pleadings.'" (quoting *Ogola v. Chevron Corp.*, No. 14-CV-173-SC, 2014 U.S. Dist. LEXIS 117397, 2014 WL 4145408, at *2 (N.D. Cal. Aug. 21, 2014))).

A review of Defendants' motion appears to reveal that they are prematurely challenging class certification, and that this may not be a rare case warranting striking Plaintiff's class allegations. *See* Doc. No. 13-1 (discussing Rule 23, typicality, and superiority). Nonetheless, Defendants contend that if "the Court grants Defendants' motion to dismiss, this motion to strike is moot and need not be decided by the Court." *Id.* As discussed above, Defendants' motion to dismiss is granted. Consequently, the Court **DENIES** Defendants' motion to strike as moot without prejudice to reasserting these arguments should Plaintiff file a Second Amended Complaint, or at class certification.

## V. CONCLUSION

Based upon the foregoing, the Court **GRANTS** Defendants' motion to dismiss and **DISMISSES** Plaintiff's Complaint for lack of personal jurisdiction with leave to amend. The Court **DENIES** Defendants' motion to strike as **moot** without prejudice.

Should Plaintiff wish to file a First Amended Complaint, he must do so on or before **November 28, 2022**.

Any amended complaint will be the operative pleading as to all Defendants, and therefore all Defendants must then respond within the time prescribed by Federal Rule of Civil Procedure 15. Any defendants not named and any claim not re-alleged in the amended complaint will be considered waived. *See* CivLR 15.1; *Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc*., 896 F.2d 1542, 1546 (9th Cir. 1989) ("[A]n amended pleading supersedes the original."); *Lacey v. Maricopa Cnty*., 693 F.3d 896, 928 (9th Cir. 2012) (noting that claims dismissed with leave to amend which are not re-alleged in an amended pleading may be "considered waived if not repled").

If Plaintiff fails to timely file a First Amended Complaint, or otherwise obtain an extension of time to do so, the Court may enter a judgment of dismissal and close this case.

**IT IS SO ORDERED**.

Dated: November 7, 2022

HON. MICHAEL M. ANELLO
United States District Judge